IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | CRIMINAL NO. RDB-11-547 |
| v. | * | |
| | * | CIVIL NO. RDB-19-0958 |
| NICKY CASH | * | |
| | * | |
| | * | |
| | ****** | |

## GOVERNMENT'S RESPONSE TO MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

The United States of America, by undersigned counsel, respectfully submits the following response in opposition to Petitioner's *pro se* Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. ECF No. 978. The Motion should be denied because it is untimely and meritless.

## BACKGROUND

Nicky Cash ("Petitioner") was a high-ranking member of Dead Man, Inc. ("DMI"), an openly violent Maryland racketeering enterprise. While part of DMI, Petitioner trafficked in narcotics, sometimes smuggling drugs into prison, was personally involved in covering up and/or committing at least two murders, and was at times a leader of the "Diamonds" – i.e., female members of DMI.

Consequently, on March 29, 2012, Petitioner was charged in a twenty-seven count Superseding Indictment with three counts relevant to her: conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO conspiracy"), in violation of 18 U.S.C § 1962(d) (Count One); accessory after the fact, in violation of 18 U.S.C § 3 (Count Six); and conspiracy to distribute and possess with intent to distribute narcotics, in violation of 21 U.S.C. § 846 (Count Twenty-Seven). ECF No. 283 (Superseding Indictment).

1

On October 25, 2012, Petitioner pled guilty to Count One, RICO conspiracy, pursuant to a written plea agreement. ECF Nos. 474 (Re-arraignment), 474 (Plea Agreement). Petitioner admitted her membership in DMI, as well as her personal involvement in the murders of two victims and the smuggling of narcotics into prison. *See* ECF No. 475 at ¶ 6. Specifically, Petitioner stipulated:

> The Defendant, Nicky Cash, acknowledges her responsibility for the crime charged in Count One of the Superseding Indictment in the above-captioned case. The Defendant acknowledges that in the time period charged in Count One, Dead Man, Inc. (DMI) was a racketeering enterprise and that each of the elements in ¶ 2 above is satisfied. Specifically she admits she was associated with or employed by the DMI enterprise and knowingly and willfully became a member of the conspiracy. She became a member of DMI in 2009. Female DMI members are called "Diamonds," and Cash was the head of the Diamonds for various periods of time. In February, 2009, Cash assisted John Adams and Michael Forame in changing their clothes after the stabbing of James Flanary. For months prior to June 2, 2009, DMI "SC" Percy Roark had placed Tony Geiger "on the menu," meaning he was to be killed. Roark's motive was fear that Geiger would cooperate with the police and reveal what he knew about a 1994 prison murder that Geiger witnessed Roark commit. On or about June 2, 2010, Percy Roark instructed Nicky Cash to pass onto John Adams Roark's order to kill Geiger forthwith. Cash called Adams telling him to come over and get Geiger out of her house. When Adams arrived, Geiger had left, but Cash told Adams to look for him and knowingly passed on Roark's order. Adams and Dane Shives immediately went to find Geiger. They returned a short time later, and Adams reported that the murder was completed. Later, in 2009, Cash became an Elder in DMI. For many months, Cash and other DMI members distributed cocaine in the area of her residence in South Baltimore and also in the area of her place of employment, Chez Joey, on Baltimore Street in downtown Baltimore. Cash frequently smuggled and aided and abetted the smuggling of heroin and other narcotics to Percy Roark in prison. The Defendant thus agreed with other members of DMI to engage in the affairs of DMI through a pattern of racketeering activity that included multiple acts of narcotics trafficking and a murder.

*Id*.

At sentencing, the Court adopted the factual findings and advisory guideline applications in the Presentence Report ("PSR") without change. Statement of Reasons ("SOR"), at I.A. Thus, the Court found that a cross-reference to U.S.S.G. § 2A1.1(a), the sentencing guideline for first

degree murder, was appropriate under § 2D1.1(d)(1),[1] due to Petitioner's involvement in the murder of Tony Geiger. PSR at ¶ 11. As a result, Petitioner's base offense level was 43 under § 2A1.1(a). *Id*. Combined with a 3-level reduction for acceptance of responsibility under U.S.S.G. §§ 3E1.1(a) and (b), her final offense level was 40. PSR at ¶ 20. When combined with a criminal history category of I, the guidelines sentencing range was 292 to 365 months. SOR at III.

On March 20, 2013, this Court granted Petitioner a downward departure that was recommended by both parties,[2] and sentenced her to 228 months' imprisonment. ECF No. 636 (Judgment and Commitment Order). Counts Six and Twenty-Seven of the Superseding Indictment, as well as the initial Indictment, were dismissed on the government's motion. *Id*.

On April 1, 2013, Petitioner filed a Notice of Appeal of her conviction and sentence. ECF No. 645. On January 15, 2014, the Fourth Circuit dismissed the appeal, on the government's motion, as barred by the appellate waiver in her plea agreement. ECF No. 774. On April 21, 2014,

---

[1]  Section 2D1.1(d)(1) provides: "If a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial and maritime jurisdiction of the United States, apply § 2A1.1(a) (First Degree Murder)."

[2]  The Court explained:

> The Government counsel and the Defense counsel both agreed that the advisory guideline range of 292 to 365 months was excessive. The Defendant acknowledged at her guilty plea that she transmitted an order to other individuals to commit a murder. Furthermore, she acknowledged assisting others in the changing of their clothes after the stabbing murder of another victim. She also acknowledged assisting in the drug distribution efforts of a prison gang. However, this is the defendant's first criminal offense and she has no prior criminal record. Accordingly, the Court examined the sentence imposed upon co-defendants previously sentence in this multidefendant case. Considering all other factors 18 U.S.C. § 3553(a)(6), the Court imposed a sentence of 19 years (228 months). (Defense counsel had suggested a sentence of 180 months and Government counsel urged a sentence of 240 months).

SOR at V.D.

the Supreme Court denied a petition for writ of certiorari. *Cash v. United States*, 572 U.S. 1078 (2014).

On March 29, 2019, Petitioner filed a *pro se* Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence, raising one claim of ineffective assistance of counsel and one claim challenging her RICO conspiracy conviction under *Johnson v. United States*, 135 S. Ct. 2551 (2015), and *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018).[3]  ECF No. 978.  Petitioner's § 2255 motion should be denied as both procedurally barred and meritless.

## LEGAL ANALYSIS

### I. Petitioner's motion is untimely under 28 U.S.C. § 2255(f).

Pursuant to the provisions of 28 U.S.C. § 2255(f), a one-year limitation period applies to petitions filed under § 2255, which runs from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

In order for Petitioner's motion to be timely under § 2255(f)(1), it must have been filed within one year of final judgment.  When a defendant files a direct appeal, the judgment of

---

[3]  The Supreme Court ruled in *Johnson* that the residual clause of the Armed Career Criminal Act's definition for violent felony, at 18 U.S.C. § 924(e)(2)(B)(ii), was unconstitutionally vague. *Johnson*, 135 S.Ct. at 2558.  *Dimaya* extended *Johnson's* ruling to the crime of violence definition at 18 U.S.C. § 16(b).  *Dimaya*, 138 S. Ct. at 1210.

conviction becomes final when the Supreme Court denies a petition for a writ of certiorari or when the time for filing a certiorari petition expires. *Clay v. United States*, 537 U.S. 522, 527 (2003); *United States v. Sosa*, 364 F.3d 507, 509 (4th Cir. 2004). The time for filing a petition for certiorari expires 90 days after entry of the Court of Appeals' judgment. *Clay*, 537 U.S. at 525.

Here, the Supreme Court denied certiorari on April 21, 2014. As a result, the limitations period expired one year later, on April 21, 2015. However, Petitioner did not file her § 2255 motion (ECF No. 172) until March 29, 2019, nearly four years after the limitations period expired. Therefore, Petitioner's motion is untimely under § 2255(f)(1).

Petitioner asserts that her § 2255 motion is timely because he filed it within one year of the Supreme Court's decision in *Dimaya*. ECF No. 978 at 12.[4] While it is true that Petitioner filed the instant motion within one year of the *Dimaya* decision, she is incorrect that her motion is therefore timely. In *Dimaya*, as noted above, the Supreme Court extended its ruling in *Johnson* to find that the residual clause in the definition of a crime of violence at 18 U.S.C. § 16(b) was unconstitutionally vague. *See Dimaya*, 138 S. Ct. at 1210. *Dimaya* has no impact on Petitioner's conviction or sentence because, as discussed below (*see infra*, Section II), her RICO conspiracy conviction is valid regardless of whether it is a crime of violence. Therefore, *Dimaya* does not render her late-filed motion timely.

Because Petitioner's motion does not rely on a right that was "newly recognized" by the Supreme Court, she cannot utilize § 2255(f)(3) to justify its late filing. Further, the Motion is not timely under any other provisions of § 2255(f), as her claim does not involve alleged unconstitutional governmental action, as required by § 2255(f)(2), nor does it allege new facts that

---

[4] The government references the electronic pagination.

5

could not have been previously discovered through the exercise of due diligence, to satisfy § 2255(f)(4).  Thus, Petitioner's Motion is clearly time-barred under § 2255.

The extraordinary remedy of equitable tolling could permit review of Petitioner's untimely Motion, however Petitioner has failed to set forth any argument supporting equitable tolling. Moreover, the facts of this case would not justify such relief, even if he had done so.  The Fourth Circuit has held that the one-year statute of limitations may be forgiven under certain limited circumstances.  *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000).  In *Harris*, the Fourth Circuit explained that equitable tolling will only be warranted in rare and extraordinary circumstances:

> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loosen the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where– due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

209 F.3d at 330.  The Fourth Circuit further held in *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003), that under *Harris's* "extraordinary circumstances" test, a petitioner is entitled to equitable tolling only if he presents: (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time.  *Rouse*, 339 F.3d at 246; *see also United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (same).  The Supreme Court has likewise recognized that a litigant seeking equitable tolling generally bears the burden of establishing that he has been diligently pursuing his rights and that some extraordinary circumstances stood in the way of filing on time.  *Pace v. DiGugliellmo*, 544 U.S. 408, 418 (2005).

Petitioner has made no attempt to invoke the doctrine of equitable tolling, as she merely claims that her motion is timely because she filed it within one year of the *Dimaya* decision. *See* ECF No. 978 at 12. Accordingly, Petitioner has not demonstrated any extraordinary circumstances beyond her control that prevented her from complying with the statutory time limit. Nor has the Government identified any circumstances that meet this high bar. Petitioner's § 2255 motion should be summarily denied as time-barred.

## II. Petitioner's constitutional challenge is procedurally barred and meritless.

### A. Petitioner's challenge of her conviction is procedurally defaulted.

Petitioner's Ground Two claim concerns the constitutionality of her conviction. *See* ECF No. 978 at 24-26. However, Petitioner cannot collaterally challenge the constitutionality of her RICO conspiracy conviction because she failed to raise that claim on direct appeal. Moreover, she specifically waived her right to file an appeal in her plea agreement (ECF No. 474 at ¶ 11), and that waiver does not excuse her procedural default.

The "'normal and customary method' for correcting alleged errors in proceedings before a trial court is by appeal, not collateral attack through a § 2255 or habeas corpus petition." *Gladhill v. United States*, No. CCB-11-48, 2011 WL 3156981, at *2 (D. Md. July 25, 2011) (quoting *Sunal v. Large,* 332 U.S. 174, 177-78) (1947). A collateral attack is more limited than an appeal, and the doctrine of procedural default generally bars consideration of any claim not raised on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Sanchez-Llamas v. Oregon*, 126 S. Ct. 2669, 2682 (2006). Habeas relief is an extraordinary remedy which "may not do service for a [direct] appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982); *Bousley v. United States*, 523 U.S. 614, 621 (1998). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." *Frady*, 456 U.S at 164.

Claims for relief pursuant to 28 U.S.C. § 2255 must be adequately preserved for collateral review. In practice, this means that the defendant must raise it at trial (whether by motion, objection or otherwise) and on direct appeal. *See Murray v. Carrier*, 477 U.S. 478, 490-92 (1986) (finding a claim not raised on direct review was procedurally defaulted).

However, a court may consider the merits of a procedurally-defaulted claim in two limited instances. Under the first exception, a petitioner must show cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error. *Bousley*, 523 U.S. at 622; *see also Wainwright v. Sykes*, 433 U.S. 72, 84 (1977); *United States v. Mikalajunas*, 186 F.3d 490, 492-95 (4th Cir. 1999). For petitioners seeking to raise a new claim on collateral review, the "cause and prejudice" standard creates a "significantly higher hurdle than would exist on direct appeal." *Frady*, 456 U.S at 166. "Cause" to excuse procedural default exists only in those cases in which a factor external to the defense prevented a defendant from raising a claim at the appropriate juncture. *Murray*, 477 U.S. at 488. "[A]ttorney error short of ineffective assistance of counsel […] does not constitute cause." *See McCleskey v. Zant*, 499 U.S. 467, 493 (1991). Thus, counsel's simple "failure to consider [an] argument" will not establish cause. *Rose v. Lee*, 252 F.3d at 687, 688. Additionally, an appeal waiver pursuant to a binding plea agreement does not excuse a defendant's failure to raise a claim on appeal. *United States v. Jones*, 56 F.3d 62, 1995 WL 321263, at *1 (4th Cir. 1995) (unpublished table opinion) ("Although [the petitioner's] plea agreement prevented him from appealing, this is not sufficient cause for his procedural default.")(citing *United States v. Wiggins*, 905 F.2d 51, 53 (4th Cir. 1990)).

Assuming a defendant shows cause, he must show "actual prejudice resulting from the errors of which he complains." *McCleskey*, 499 U.S. at 493-94 (quoting *Frady*, 456 U.S. at 168). To establish prejudice, a defendant must show not merely that the claimed errors resulted in a

possibility of prejudice, "but that they worked to his actual and substantial disadvantage […]." *Frady*, 456 U.S. at 170; *Mickens v. Taylor*, 240 F.3d 348, 356 (4th Cir. 2001).

Under the second exception, a court may allow a petitioner to proceed with a § 2255 motion if "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496; *Bousley*, 523 U.S. at 622. The "actual innocence" exception applies "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. As such, a petitioner "must demonstrate actual factual innocence of the offense of conviction, i.e., that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." *United States v. Pettiford*, 612 F.3d 270, 282 (4th Cir. 2010). The Supreme Court has described such cases as "extraordinary" and presenting "a fundamental miscarriage of justice." *McCleskey*, 499 U.S. at 494. Thus, procedural default generally presents a substantial obstacle to petitioners seeking habeas relief.

Moreover, procedural default "has special force with respect to convictions based on guilty pleas." *Bousley*, 523 U.S. at 621 (citing *United States v. Timmreck*, 441 U.S. 780, 784 (1979)). Convictions based on guilty pleas "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). In *Bousely*, the Supreme Court stated that "even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Bousely*, 523 U.S. at 621. Here, Petitioner voluntarily entered into a plea agreement and should not be allowed now to resuscitate claims as to which she knowingly and willingly defaulted. Petitioner does not address procedural default in her motion; that is, she does not demonstrate cause to excuse her failure to challenge her conviction on direct appeal, nor does she make any

9

suggestion that she did not factually commit the offenses. Any such argument runs contrary to Petitioner's signed plea agreement and statement of facts.

### B. The Supreme Court's decision in *Dimaya* had no impact on Petitioner's RICO conspiracy conviction.

Notwithstanding Petitioner's procedural default of her claim in Ground Two, the request for relief pursuant to the Supreme Court's decision in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), also lacks any merit. Petitioner contends that she is "actually innocent" of her RICO conspiracy conviction because "it was not predicated on a 'crime of violence.'" ECF No. 978 at 24. This argument is unavailing, however, as RICO conspiracy under 18 U.S.C. § 1962(d) need not be deemed a crime of violence in order for one to stand validly convicted under the statute. And the *Dimaya* decision changed nothing in this respect.

In *Dimaya*, the Supreme Court found that, under the categorical approach, the "residual clause" of the crime of violence definition at 18 U.S.C. § 16(b) was unconstitutionally vague. *Dimaya*, 138 S. Ct. at 1210. Section 16 defines "crime of violence," for purposes of the federal criminal code, as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16. The § 16(b) residual clause impacted the defendant in *Dimaya* by rendering him deportable under the Immigration and Nationality Act (8 U.S.C. § 1227(a)(2)(A)(iii)) due to a prior conviction that was deemed a crime of violence and therefore an "aggravated felony." *Dimaya*, 138 S. Ct. at 1211 ("removal is a virtual certainty for an alien found to have an aggravated felony conviction."). Specifically, Dimaya's prior California first degree burglary conviction was found

to be a crime of violence under § 16(b) because "[b]y its nature," […] the offense "carries a substantial risk of the use of force." *Id*.

Section 16(b) has no such effect on a § 1962(d) RICO conspiracy conviction, however. To prove a RICO conspiracy offense, "evidence must show the existence of a RICO 'enterprise' in which the defendant conspired to participate, and that the defendant conspired that a member of the enterprise would perform at least two racketeering acts constituting a 'pattern of racketeering activity.'" *United States v. Pinson*, 860 F.3d 152, 161 (4th Cir. 2017) (citing *Salinas v. United States*, 522 U.S. 52, 62 (1997); *United States v. Cornell*, 780 F.3d 616, 621 (4th Cir. 2015). The offense does not require a crime of violence in order to show a pattern of racketeering activity. Rather, predicate "racketeering activity" includes, *inter alia*, "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical […] which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961.

Accordingly, Petitioner's RICO conspiracy conviction, which was supported by her admission that she "agreed with other members of DMI to engage in the affairs of DMI through a pattern of racketeering activity that included <u>multiple acts of narcotics trafficking and a murder</u>," remains valid. ECF No. 475 (Plea Agreement) at ¶ 6 (emphasis added).

Moreover, although the precise rationale behind Petitioner's claim is unclear, it appears that she has confused her § 1962(d) conviction with a separate RICO statute – violent crimes in aid of racketeering under 18 U.S.C. § 1959. *See* ECF No. 978 at 24 ("Petitioner's § 1962(d) is incorporated into § 1959"); *see id*. ("Petitioner is actually innocent of her 18 U.S.C. § 1959 conviction"); *see id*. ("RICO with an underlying murder conviction is not a crime of violence").

11

Petitioner was not convicted of a § 1959 offense, however. Thus, any argument with respect to Section 1959 has no import here.

Even if Petitioner had been convicted of a violent crime in aid of racketeering ("VICAR"), her arguments would nonetheless be meritless, as the Fourth Circuit has found that the categorical approach that was central in the *Dimaya* decision does not apply to Section 1959. *United States v. Keene*, 955 F.3d 391, 398 (4th Cir. 2020) ("we need not apply the categorical approach to protect the defendants' rights under the VICAR statute.").

Accordingly, Petitioner's constitutional challenge of her RICO conspiracy conviction is both procedurally defaulted and meritless, and should be summarily denied.

## CONCLUSION

For the reasons stated herein, the Government respectfully requests that this Honorable Court DENY Petitioner's Motion with prejudice.

Respectfully submitted,

Robert K. Hur
United States Attorney

By:  _____/s/_____
Christopher J. Romano
Assistant United States Attorney

_____/s/_____
Ellen E. Nazmy
Special Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 4, 2020, a copy of the foregoing Response was mailed to:

Nicky Cash, #53977-037
FCI Hazelton
Federal Correctional Institution
P.O. Box 5000
Bruceton Mills, WV 26525

By: _____/s/_____
Ellen E. Nazmy
Special Assistant United States Attorney